UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

      MARK DUHANEY,

                         Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 13
Case No.: 18-45846-ess

## MEMORANDUM DECISION ON THE DEBTOR'S APPLICATION TO REOPEN THIS CHAPTER 13 CASE AND FOR OTHER RELIEF

Appearances:

Mark Duhaney
738 East 95th Street
Brooklyn, NY  11236
  *Debtor, pro se*

Brian Schechter, Esq.
Office of the Chapter 13 Trustee
100 Jericho Quadrangle (Suite 127)
Jericho, NY  11753
  *Attorney for the Chapter 13 Trustee*

David Lapa, Esq.
Menashe & Lapa LLP
400 Rella Boulevard (Suite 190)
Suffern, NY  10901

Pallavi Bhave, Esq.
Eisenberg, Gold & Agrawal
1040 North Kings Highway (Suite 200)
Cherry Hill, NJ  08034
  *Attorneys for Lycan Capital Fund I LLC*

## **Introduction**

A request to reopen a bankruptcy case under Bankruptcy Code Section 350(b) is typically a straightforward matter.  Here, the question of whether to reopen this bankruptcy case raises two issues of note.

First, Section 350(b) permits this a case to be reopened "in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  And a neighboring provision in the Bankruptcy Code, Section 350(a), states that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  But are these two provisions mere neighbors, or is one conditioned on the other?  That is, in order to reopen the case under Section 350(b), is it necessary that the case be "fully administered"?

And second, the grounds set forth in Section 350(b) for reopening the bankruptcy case are broad indeed – "to administer assets, to accord relief to the debtor, or for other cause."  Yet, what if the "relief" that the debtor seeks is simply not available?  If there is a plausible or colorable basis for the relief that the debtor seeks to pursue, that is one thing.  But where there simply is no prospect of the "relief to the debtor," should the case nevertheless be reopened?

The Court considers these questions in turn.

## **Jurisdiction**

This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157 and 1334, and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to Judiciary Code Section 157(b)(2)(A) and 157(b)(2)(K).  Venue is proper in this Court pursuant to Judiciary Code Sections 1408 and 1409.

## Selected Background and Procedural History

### *Mr. Duhaney's Chapter 13 Case*

On October 11, 2018, Mark Duhaney, by counsel, filed a petition for relief under Chapter 13 of the Bankruptcy Code.  On his bankruptcy petition, he lists 738 East 95th Street, Brooklyn, NY 11236 as his residence (the "Property").  *See* ECF No. 1.  On Schedule A/B, he claims a 100 percent interest in the Property, and values it at $593,000.  *Id*.  On Schedule D, Mr. Duhaney lists Planet Home Lending as having a $1,096,618, claim that is secured by the Property.  *Id*.  Planet Home Lending is the servicer for the mortgage held by Goshen Mortgage LLC, as separate trustee for GDBT I ("Goshen").  *See* Proof of Claim 3-1.

On November 13, 2018, Mr. Duhaney filed a Chapter 13 Plan.  Chapter 13 Plan, ECF No. 9 (the "Plan").  The Plan proposes that Goshen's secured claim will be addressed through a loan modification to be pursued in the bankruptcy case by Mr. Duhaney.  Plan at 3.

On November 27, 2018, the Chapter 13 Trustee filed a motion to dismiss the case on grounds, among others, that Mr. Duhaney did not provide proof of post-petition mortgage payments, proof of payment of domestic support obligations, and an affidavit stating whether all applicable federal, state, and local tax returns under Bankruptcy Code Section 1308 have been filed, as required by E.D.N.Y. LBR 2003-1(a) and (b); that he did not provide copies of payment advices or other evidence of payment received within 60 days before the date of filing, or a copy of a federal income tax return for the most recent year, as required by Bankruptcy Code Sections 521(a) and 521(e); that he did not appear and be examined at the Section 341 Meeting of Creditors, as required by Bankruptcy Code Section 343; and that he did not make timely Chapter 13 plan payments as required by Bankruptcy Code Section 1326(a)(1), and was some $2,700, in

arrears at the time of the Motion.  Chapter 13 Motion to Dismiss, ECF No. 13 (the "Motion to Dismiss"), at 1-2.

On November 30, 2018, Mr. Duhaney filed a request to enter into this Court's loss mitigation program with Planet Home Lending, the servicer for Goshen.  Loss Mitigation Request, ECF No. 14.  No opposition was made to that request, and on December 21, 2018, the Court entered an Order directing that Mr. Duhaney and Planet Home Lending participate in loss mitigation.  Order, ECF No. 16.

On April 30, 2019, Goshen filed a Loss Mitigation Status Report stating, among other things, that it offered Mr. Duhaney a loan modification that called for a $30,000 good faith down payment and a six-month trial period.  Loss Mitigation Status Report filed by Alan Smikun on Behalf of Goshen Mortgage dated April 30, 2019, ECF No. 22.  Thereafter, Mr. Duhaney made a counteroffer to pay a $10,000 down payment with the payment of the remaining balance over time.  *Id.*  But the parties could not agree on the value and payment schedule of the proposed down payment.  *Id*.  From time to time, and on May 23, 2019, the Court held loss mitigation status conferences at which Mr. Duhaney and Goshen appeared and were heard, and at the May 23, 2019, status conference, loss mitigation was terminated on consent.

On August 5, 2019, Mr. Duhaney, again by counsel, filed a letter of no opposition to the Motion to Dismiss.  Letter dated August 2, 2019, ECF No. 23.  And on August 5, 2019, the Court held a hearing on the Motion to Dismiss at which Mr. Duhaney and the Chapter 13 Trustee appeared and were heard, and, without opposition, the Court granted the Chapter 13 Trustee's Motion to Dismiss.

On August 30, 2019, the Court entered an order granting the Motion to Dismiss and dismissed the case.  Order Dismissing Case, ECF No. 25.  And just over two months later, on

November 6, 2019, the Court entered an order closing the case.  Order Closing Case, ECF No. 28.

*Mr. Duhaney's Application To Reopen this Bankruptcy Case and for a Stay Violation Finding*

On May 7, 2025, Mr. Duhaney filed an Application in Support of an Order To Show Cause.  Application in Support of Order to Show Cause, ECF No. 29 (the "Application" or "App.").  Though he was represented in his Chapter 13 bankruptcy case, he filed this application *pro se*.  Mr. Duhaney asks the Court to reopen this bankruptcy case and to find that Goshen violated the automatic stay when, on August 21, 2019, and while this case was pending, it assigned the mortgage on the Property to Lycan Capital Fund I LLC ("Lycan").  Application at 2.  He also seeks a declaration that the assignment is void and an order directing Lycan to cease taking any action against the Property.  App. at 1-2.  And he asks the Court to impose penalties on Lycan for violating the automatic stay.  App. at 2.  Finally, Mr. Duhaney seeks leave to file an adversary complaint upon the reopening of the case to vacate all related state court filings and to seek money damages.  App. at 4.

In support of the Application, Mr. Duhaney submits a copy of the assignment, recorded on August 21, 2019, as well as the case's docket sheet and this Court's order of dismissal.  App. at 2; Exh. C; Exh. A; Exh. B.

On June 30, 2025, the Chapter 13 Trustee filed Opposition to Mr. Duhaney's Application.  Opposition to Motion to Reopen Case, ECF No. 33 (the "Trustee Opposition" or "Trustee Opp.").  She argues that this case cannot be reopened pursuant to Bankruptcy Code Section 350(b) because it was not closed pursuant to Bankruptcy Code Section 350(a).  Trustee Opp. at 1.  And she points to the bankruptcy court's decision in *In re Alfau*, where the court found:

> A case that is automatically dismissed under § 521(i) is not "fully administered" and "closed" pursuant to § 350(a). Thus, a bankruptcy case that has not been fully administered and closed cannot be reopened under § 350(b). *Olejnik*, 2010 WL 4366183, at *3; *Critical Care Support Servs.*, 236 B.R. at 140-41 (noting that § 350(b) was not implicated where the debtor's bankruptcy petition was dismissed as opposed to closed within the meaning of § 350(a).)

Trustee Opp. at 1 (citing *In re Alfau*, 2024 WL 2036108, at *5 (Bankr. E.D.N.Y. May 7, 2024)), ECF No. 33.

In addition, the Chapter 13 Trustee argues that the post-petition assignment of a mortgage is not a violation of the automatic stay. Trustee Opp. at 1-2 (citing *In re Doresca*, 2024 WL 3418064 (Bankr. E.D.N.Y. July 15, 2024)). She states, "courts have recognized that postpetition assignments of mortgage do not constitute acts to 'create, perfect or enforce' a lien in violation of 11 U.S.C. § 362(a)." *Id.*

On July 23, 2025, Lycan filed Opposition to Mr. Duhaney's Application. Opposition to Debtor's Motion to Reopen Case, ECF No. 36 (the "Lycan Opposition" or "Lycan Opp."). It asserts that on March 26, 2015, Goshen commenced a foreclosure action against Mr. Duhaney, and on June 26, 2018, it was awarded a judgment of foreclosure. Lycan Opp. at 2. Lycan states that a foreclosure auction was scheduled for October 11, 2018, but was stayed when that same day, Mr. Duhaney filed this bankruptcy case. *Id.*

Lycan states that Mr. Duhaney's October 2018 bankruptcy case was the first of five bankruptcy cases filed by Mr. Duhaney and his co-obligors or family members, including Pearl Kelly, a co-occupant with Mr. Duhaney, and Ceceile Campbell, Mr. Duhaney's mother, to halt the foreclosure process. Lycan Opp. at 2-7.

Lycan also states that this series of filings includes the filing of a Chapter 13 case by Ms. Kelly, *In re Pearl Kelly*, Case No. 23-41085, before Judge Mazer-Marino of this Court, on March 30, 2023, the same day that another foreclosure sale was scheduled to occur. Lycan Opp.

at 3-4. Lycan states that it did not receive notice of that filing and proceeded with the auction and foreclosure sale that day. Lycan Opp. at 3. And on May 19, 2023, Judge Mazer-Marino entered an order retroactively validating the sale of the Property and granting Lycan *in rem* stay relief with respect to the Property for a period of two years. Lycan Opp. at 3-4.

Lycan further states that on November 25, 2024, it received an order and writ of possession to schedule an eviction from New York Supreme Court, Kings County. Lycan Opp. at 4. Pursuant to the Supreme Court's order, a sheriff's eviction was scheduled for July 17, 2025 – and then that eviction was stayed by the fifth and latest bankruptcy case, *In re Ceceile Nertella Campbell*, Case No. 25-43136, also before Judge Mazer-Marino, filed by Ms. Campbell. Lycan Opp. at 7.[1]

Lycan, like the Chapter 13 Trustee, argues that since Mr. Duhaney's bankruptcy case was dismissed, it was not fully administered and cannot be reopened pursuant to Bankruptcy Code Section 350(b). Lycan Opp. at 8-9 (citing *In re Income Prop. Builders, Inc.*, 699 F.2d 963 (9th Cir. 1982); *In re Kent Funding Corp.*, 290 B.R. 471, 476 (Bankr. E.D.N.Y. 2003); *France v. Lewis & Coulter, Inc.* (*In re Lewis & Coulter, Inc.*), 159 B.R. 188, 191 (Bankr. W.D. Pa. 1993)). And, like the Chapter 13 Trustee, Lycan argues that a post-petition assignment of a mortgage, such as the one at issue, is not an act to "create, perfect, or enforce" a lien and therefore does not violate the automatic stay. Lycan Opp. at 9 (citing *Sigmon v. Cornerstone Home Lending* (*In re Sprouse*), 2014 WL 948490, at *4-5 (Bankr. W.D.N.C. Mar. 11, 2014)).

---

[1] While Mr. Duhaney's Application was pending, Lycan moved for *in rem* stay relief in *In re Ceceile Nertella Campbell*. *In re Ceceile Nertella Campbell*, Case No. 25-43136, ECF No. 9. A hearing on that motion was held by Judge Mazer-Marino on August 12, 2025, at which the Court granted Lycan's motion, and an *in rem* stay relief order was entered on August 26, 2025. *See In re Ceceile Nertella Campbell*, Case No. 25-43136, ECF entry dated August 12, 2025 (hearing); ECF No. 23 (Order).

On July 30, 2025, the Court held a hearing on the Application, at which Mr. Duhaney, the Chapter 13 Trustee, and Lycan appeared and were heard.  On that same day, shortly before the hearing, Mr. Duhaney filed a Supplemental Memorandum of Law in Further Support of the Motion to Reopen Case, ECF No. 38 ("Memorandum in Support" or "Mem. in Support").  In that Memorandum, Mr. Duhaney reiterates his argument that Goshen's assignment of the mortgage to Lycan violated the stay and requests that his bankruptcy case be reopened to permit him to file an adversary proceeding to address the asserted stay violation pursuant to Bankruptcy Code Section 362(k) against Lycan.  Mem. in Support at 3-4.

On August 13, 2025, the Court held a continued hearing on the Application, at which Mr. Duhaney, the Chapter 13 Trustee, and Lycan appeared and were heard.  At that hearing, the Court set a schedule for supplemental filings by the parties, permitting Mr. Duhaney to file any further submissions by August 27, 2025, and Lycan to file any further response by September 17, 2025.  The Court set a continued hearing on the Application for September 29, 2025.

On August 27, 2025, Mr. Duhaney filed a Supplemental Memorandum in Further Support of Motion to Reopen Case Pursuant to 11 U.S.C. § 350(b), ECF No. 41 (the "Supplemental Memorandum in Support" or "Supp. Mem. in Support").  In his Supplemental Memorandum in Support, Mr. Duhaney argues, in substance, that the assignment of the mortgage to Lycan was part of a "pre-planned scheme to shift the prosecution of the foreclosure, convert control over the Premises, and insulate Goshen from tax exposure," among other questionable or improper objectives.  Supp. Mem. in Support at 2 (citing *In re Sprouse*, 2014 WL 948490, at *2).

Mr. Duhaney also points to a pattern of assertedly improper practices by Lycan and its attorney, David Lapa, who functioned in several roles in connection with Lycan and the

transactions at issue.  Supp. Mem. in Support at 2-4.  And he asserts that Mr. Lapa's roles give rise to a conflict of interest and violate New York's Rules of Professional Conduct.  Supp. Mem. in Support at 12-16.

Mr. Duhaney argues, in substance, that Lycan violated New York Banking Law Article 12-D, and seeks information concerning the operations, membership, and licensing of Lycan, among other matters.  Supp. Mem. in Support at 5-9.  He also asserts that the Assignment of Mortgage from Goshen to Lycan is defective.  Supp. Mem. in Support at 24-28.

And Mr. Duhaney questions the adequacy and appropriateness of service on Goshen and argues that this undermines the standing of the parties to proceed.  Supp. Mem. in Support at 9-12.  He also argues that the question of standing remained unaddressed for many years, as the parties continued to litigate in New York state court.  Supp. Mem. in Support at 16-24.

Finally, Mr. Duhaney requests several forms of relief, all in connection with the asserted stay violation, including vacating the dismissal of this bankruptcy case; reinstatement of the automatic stay; granting leave to file an adversary proceeding with expedited discovery and an evidentiary hearing; and a direction that all parties maintain the status quo as to the property.  Supp. Mem. in Support at 28-30.

On September 17, 2025, Lycan filed a Supplemental Opposition to Debtor's Motion to Reopen Case, ECF No. 45 ("Supplemental Opposition" or "Supp. Opp.").  In its Supplemental Opposition, Lycan asserts that Mr. Duhaney's Supplemental Memorandum in Support "raises no new legal arguments" and does not change the fact that his "central theory – that a 2019 assignment of mortgage from Goshen to Lycan violated the automatic stay – is foreclosed by settled case law."  Supp. Opp. at 1.  Lycan also argues that Mr. Duhaney lacks standing to challenge the assignment, because he is not a party to it.  Supp. Opp. at 2.

Lycan also disputes that "Lycan's corporate formation or licensure status somehow voids the assignment or undermines Lycan's standing." Supp. Opp. at 3. These matters, it argues, are "of no legal consequence in this proceeding." *Id*. And it states that "New York law does not prohibit creditors from assigning mortgages to newly formed entities, nor does it prohibit those entities from hiring the same counsel who formed them." *Id*. For the same reasons, it states that Mr. Duhaney's assertion "of a conflict of interest is also baseless." *Id*. It notes that "[a]ttorneys routinely form and represent LLCs in real estate and commercial transactions." *Id*.

And Lycan notes that Mr. Duhaney's "conduct has already been found to have been part of [a] scheme to hinder and delay Lycan's rights." Supp. Opp. at 4. It concludes:

> Simply put, there was no impropriety here on behalf of Lycan – only a well-worn procedural strategy to hinder and delay a lawful order of possession and relitigate final state court rulings through collateral attack [that] is barred by the Rooker-Feldman Doctrine. This Court is not the proper forum for the [Debtor's] baseless contentions and [they] should not be entertained.

*Id*.

Finally, on September 29, 2025, the Court held a continued hearing on the Application, at which Mr. Duhaney, the Chapter 13 Trustee, and Lycan appeared and were heard. At that hearing, the Court closed the record and reserved decision on the Application.

## Discussion

This Application calls for the Court to consider several matters. To begin, the Court notes the liberal construction that is properly accorded to submissions and requests for relief that are advanced by self-represented individuals. Next, the Court considers the standard that applies to reopening a bankruptcy case under Bankruptcy Code Section 350. This calls for at least two questions to be addressed – first, whether a case must be "closed" under Section 350(a) in order to be reopened under Section 350(b); and second, whether it is appropriate to consider the

availability of the relief sought in the context of determining whether reopening "to accord relief

to the debtor" is warranted. 11 U.S.C. § 350(b). And finally, the Court considers whether Mr.

Duhaney has met the standards applicable for the relief that he seeks in the Application.

### Consideration and Construction of Pro Se Submissions

At the outset, it is worth noting that special consideration and rules of construction are

appropriate in the assessment of filings and requests for relief that are made by *pro se* parties.

As the Second Circuit has observed:

> [A] *pro se* litigant is entitled to "special solicitude," that a *pro se* litigant's
> submissions must be construed "liberally," and that such submissions must be
> read to raise the strongest arguments that they "suggest." At the same time, our
> cases have also indicated that we cannot read into *pro se* submissions claims that
> are not "consistent" with the *pro se* litigant's allegations, or arguments that the
> submissions themselves do not "suggest," that we should not "excuse frivolous or
> vexatious filings by *pro se* litigants," and that *pro se* status "does not exempt a
> party from compliance with relevant rules of procedural and substantive law."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted).

### The Question of Reopening this Bankruptcy Case Under Bankruptcy Code Section 350(b)

One question presented by Mr. Duhaney's Application is whether this bankruptcy case may

be reopened under Bankruptcy Code Section 350(b). That Section, and Section 350(a), are often

considered in tandem, and they state:

> (a) [Closing –] After an estate is fully administered and the court has discharged
> the trustee, the court shall close the case.
>
> (b) [Reopening –] A case may be reopened in the court in which such case was
> closed to administer assets, to accord relief to the debtor, or for other cause.

11 U.S.C. §§ 350(a), 350(b).

Mr. Duhaney seeks to reopen this Chapter 13 bankruptcy case so that, in substance, he

may pursue relief against Lycan for an asserted violation of the automatic stay while this case

was pending. Mr. Duhaney cites *In re Edwards,* 901 F.2d 1383, 1387 (7th Cir. 1990) for the

10

proposition that a dismissed bankruptcy case may be reopened under Bankruptcy Code Section 350(b) for cause, to protect the integrity of the bankruptcy process.  Mem. in Support at 2.[2]  That stay violation occurred, he argues, when Goshen assigned the mortgage that it held on the Property to Lycan.  Application at 1-2.

Lycan responds that Mr. Duhaney's bankruptcy case may not be reopened under Bankruptcy Code Section 350(b) because it was not "fully administered" and the trustee discharged under Section 350(a).  Lycan Opp. at 8-9.

And the Chapter 13 Trustee similarly argues that in the absence of a bankruptcy case closing that comports with the terms of Section 350(a), a case cannot be reopened under Section 350(b).  Trustee Opp. at 1.

At the outset, it is plain from the language of Bankruptcy Code Section 350(a) that a court *shall* close a case "[a]fter an estate is fully administered" and the trustee is "discharged." 11 U.S.C. § 350(a).  That is, once the work of the case is done, then the court "shall" close the case.  Cases should not be open for longer than necessary, and when these conditions are met, closing the case is the statutorily-mandated next step.

It is also plain from the language of Bankruptcy Code Section 350(b) that a court *may* reopen a case "to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  That is, a court *may* exercise its discretion, upon a proper showing of "cause," to reopen a bankruptcy case to complete any work that remains to be done – whether to administer an asset, "to accord relief to the debtor," or, more generally, "for other cause."  *Id*.

---

[2]  The Court notes that *In the Matter of Edwards*, 901 F.2d 1383 (7th Cir. 1990), addresses aspects of a debtor's reaffirmation of a debt and does not appear to address Section 350(b) or the reopening of a bankruptcy case.  It also does not appear to include the text quoted by Mr. Duhaney in his Memorandum in Support.

And it is evident that a bankruptcy case that has been "closed" under Bankruptcy Code Section 350(a) *may* be the subject of a request to reopen a case under Section 350(b).  But it is less clear whether *only* a case that has been closed under Section 350(a) may be reopened under Section 350(b).  Put another way, where a bankruptcy case has not been fully administered and the trustee discharged under Section 350(a), may a court nevertheless reopen the case under Section 350(b)?

Some courts have found or inferred a connection between Section 350(a) and 350(b) in considering a motion to reopen under Section 350(b).  They have looked to whether a case has been closed pursuant to Section 350(a) to address a request to reopen a case under Section 350(b), and have considered that to be, in substance, a condition precedent to reopening the case.

As one district court found:

> [A] bankruptcy is normally closed after the bankruptcy proceedings are completed.  At that time the debts of the bankrupt are usually discharged and the proceeds of debtor's nonexempt assets divided among creditors.  A bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the prebankruptcy status [which is what happens after an order of dismissal], but to continue the bankruptcy proceeding.  The word "reopened" used in Section 350(b) obviously relates to the word "closed" used in the same section.  In our opinion a case cannot be reopened unless it has been closed.  An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and thus is not an order closing.

*Critical Care Support Servs., Inc. v. United States* (*In re Critical Care Support Servs.*), 236 B.R. 137, 140-41 (E.D.N.Y. 1999) (quoting *Armel Laminates, Inc v. Lomas & Nettleton Co.* (*In re Income Property Builders, Inc.*), 699 F.2d 963, 965 (9th Cir. 1982)).

Describing this line of authority, the Collier's treatise states:

> The Court of Appeals for the Ninth Circuit and other courts have held that a case cannot be reopened unless it was closed pursuant to section 350(a) after it has been administered.  Therefore, a dismissed case cannot be reopened under section 350(b).  A dismissal can be undone only through an appeal or a motion under Federal Rule of Bankruptcy Procedure 9023 or 9024.

3 Collier on Bankruptcy ¶ 350.03, at 350-07 (Richard Levin & Henry J. Sommer eds., 16th ed.) (footnote omitted).

At the same time, courts and Collier's alike recognize that, in substance, a request to reopen a case under Section 350(b) to accord relief to the debtor should be viewed as an opportunity to address and protect rights or obligations that arise under the Bankruptcy Code, and that otherwise would remain unaddressed.  This makes sense – again, as the Collier's treatise notes, "only rarely should the bankruptcy court decline to exercise its jurisdiction to enforce rights arising under the Bankruptcy Code."  3 Collier on Bankruptcy ¶ 350.03[4], at 350-13 (Richard Levin & Henry J. Sommer eds., 16th ed.).  *See Arleaux v. Arleaux* (*In re Arleaux*), 210 B.R. 148, 149 (B.A.P. 8th Cir. 1997) (reasoning that a court should routinely reopen cases unless a complaint is completely lacking in merit).

And a court may decline to reopen a case where the claims to be asserted clearly lack merit.  As one bankruptcy appellate panel has observed, "'where . . . the proposed dischargeability complaint is completely lacking in merit, it is not inappropriate for the court to examine the issues, nor is it an abuse of discretion to deny the motion to reopen.'"  *Pennington-Thurman v. Bank of Am. N.A.* (*In re Pennington-Thurman*), 499 B.R. 329, 332 (B.A.P. 8th Cir. 2013) (quoting *In re Arleaux*, 210 B.R. at 149).

Finally, a motion to reopen a bankruptcy case is committed to the "broad discretion" of the bankruptcy court.  3 Collier on Bankruptcy ¶ 350.03[5] at 350-15 (Richard Levin & Henry J. Sommer eds., 16th ed.).  The court "may consider numerous factors, including equitable concerns, and ought to emphasize substance over technical considerations."  *Id*.  *See In re Arleaux*, 210 B.R. at 149 (stating that "[i]t is well settled that bankruptcy judges enjoy considerable discretion in deciding whether to reopen cases" (citing cases)).

In light of these considerations, it is far from clear that *only* a case that has been fully administered and closed under Section 350(a) is eligible to be reopened under Section 350(b), for several reasons.

At the outset, the plain text of Sections 350(a) and 350(b) does not require that closure under Section 350(a) is a prerequisite to reopening under Section 350(b). One subsection does not depend on, or even refer to, the other. Instead, Section 350(a) directs that a court *shall* close a case when, in substance, the work of the case is done. And Section 350(b) provides that a court *may* reopen a case, in the court's discretion, if one of the criteria to reopen the case is met.

In addition, Section 350(b) sets out a broad and permissive framework to address whether a court *may* reopen a case to address, in substance, any matters that may require attention. It is hard to imagine more sweeping or inclusive language than "to administer an asset, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). It would be odd indeed if somehow, a court's hands were tied in the face of a legitimate and useful request to reopen a bankruptcy case, simply because the bankruptcy estate had not been "fully administered." 11 U.S.C. § 350(a).

Accordingly, this Court finds and concludes that it is not necessary for Mr. Duhaney's bankruptcy case to have been "fully administered" and closed under Bankruptcy Code Section 350(a) as a condition to considering whether it should be "reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §§ 350(a), 350(b).[3]

---

[3] In the alternative, if a case must be closed under Bankruptcy Code Section 350(a) to be eligible to be reopened under Section 350(b), then the outcome here would be the same. That is, following that rule, Mr. Duhaney would not be entitled to reopen this bankruptcy case under Bankruptcy Code Section 350(b), because it was not fully administered under Section 350(a).

What does this mean in practice?  The question of reopening a case calls for the Court to assess the grounds advanced in the motion both in the context of the statutory requirements of Section 350(b) and in the context of the facts and circumstances of the particular case.  And a pragmatic approach that "emphasize[s] substance over technical considerations" is not misplaced.  3 Collier on Bankruptcy ¶ 350.03[5] at 350-15 (Richard Levin & Henry J. Sommer eds., 16th ed.).[4]

The reasoning followed by one bankruptcy court is instructive.  In *In re Weber*, the bankruptcy court considered a motion to reopen a bankruptcy case in order to determine whether a violation of the automatic stay had occurred.  *In re Weber*, 283 B.R. 630 (Bankr. D. Mass. 2002).  As the court explained, "first, as a matter of procedure, the Movants seek the reopening of the case.  Second, the Movants ask that, once the case is reopened, the Court void [the action that assertedly violated the automatic stay]."  *In re Weber*, 283 B.R. at 633.  The court found:

> Although sequential logic would suggest that the Court first determine whether to reopen the case, there is no reason to reopen the case if there was no stay violation.  Accordingly, the Court will consider first whether the automatic stay was violated and allow that determination to properly influence whether the case should be reopened.

*Id*.  *See In re Smith*, 400 B.R. 370, 376-77 (Bankr. E.D.N.Y. 2009), *aff'd*, 426 B.R. 435 (E.D.N.Y. 2010), *aff'd*, 645 F.3d 186 (2d Cir. 2011) (affirming bankruptcy court decision to deny motion to motion to reopen to pursue adversary proceeding where underlying complaint was meritless); *Reichel v. Jensen-Carter* (*In re Reichel*), 645 B.R. 620, 624 (B.A.P. 8th Cir. 2022) (finding that

---

And here, the Court reaches the same conclusion – that this case should not be reopened – but on different grounds.

[4]  It is worth noting that as a matter of case administration, in a Chapter 13 bankruptcy case that is dismissed without being fully administered – as Mr. Duhaney's case was – the Chapter 13 trustee enters a Final Report and Account for Dismissed Case, and the bankruptcy case is closed. *See* ECF No. 27 (final report) and 28 (order closing case and discharging trustee).

"[i]f a debtor's request is futile because the relief sought lacks merit, a request to reopen is not warranted").

That is, where, as here, a motion to reopen a case to "accord relief to the debtor," may seem to direct the Court first to the question of reopening, that query may well be inextricably intertwined with the question of whether the relief that the debtor ultimately seeks is available. Where the debtor has asserted a plausible or colorable basis to seek the relief at issue, and even where the answer to that question is not clear from the record, then reopening the case is likely to be the appropriate outcome. The same may well be true if the question of whether the relief is available is a close call. But where, as in *In re Weber*, the court concludes that the relief is simply not available, then the court may "allow that determination to properly influence whether the case should be reopened." *In re Weber*, 283 B.R. at 633.

Accordingly, this Court finds and concludes that it is appropriate first to consider whether Mr. Duhaney has established a plausible or colorable basis for his claim of a violation of the automatic stay, and then, in light of that assessment, to consider whether this bankruptcy case should be reopened.

*Whether Mr. Duhaney Has Stated a Plausible or Colorable Claim for a Violation of the Automatic Stay*

Mr. Duhaney's argument that Goshen has violated the automatic stay is straightforward. He asserts that Goshen violated the automatic stay when, on August 21, 2019, and while this bankruptcy case was pending, it transferred and assigned the mortgage on the Property to Lycan. App. at 2. He states:

> I am asking the Court to reopen my bankruptcy case and to declare that the transfer of my property, in the form of a mortgage assignment from Goshen Mortgage LLC, Trustee for GDBT I Trust 2011-1, to Lycan Capital Fund I LLC, is void because it was made during my active bankruptcy case, without Court permission, and in violation of the automatic stay.

App. at 1.  Mr. Duhaney seeks to reopen this bankruptcy case to seek a declaration that the assignment is void, and to seek the imposition of penalties on Lycan for its actions.  App. at 1-2. He also asks the Court to enjoin any further action against the Property by Lycan.  *Id.*

So, in order to set forth a plausible or colorable claim for a violation of the automatic stay, Mr. Duhaney must describe acts or conduct that, if proven, would amount to a stay violation.  And the Court must view his assertions generously, through the lens of the liberal construction that is due to filings and requests for relief that are made by *pro se* parties.  But still, a stay violation claim that passes a minimum threshold of viability must be made.

The starting point for considering whether Mr. Duhaney has described a plausible or colorable claim for a violation of the automatic stay is found in the plain text of the Bankruptcy Code.  Section 362(a)(4) states that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4).  And Section 362(a)(5) states that the bankruptcy case also stays "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(5).

Courts in this Circuit, including this Court, recognize that a party seeking damages and other relief for a violation of the automatic stay must prove the following elements: "(1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages."  *In re Laskaratos*, 605 B.R. 282, 299-300 (Bankr. E.D.N.Y. 2019) (citing *In re Leiba*, 529 B.R. 501, 506 (Bankr. E.D.N.Y. 2015)).  "Courts also recognize that the term 'willful' in the context of § 362(k) means any deliberate act taken by a creditor in

violation of the automatic stay, which the violator knows to be in existence." *In re Laskaratos*, 605 B.R. at 300 (internal quotations omitted).

How does this apply in the context of a debtor's assertion that an assignment of a mortgage is a stay violation? In one recent decision addressing similar allegations, the bankruptcy court found that "[c]ourts have recognized that postpetition assignments such as the Assignment of Mortgage at issue here do not constitute acts to "create, perfect, or enforce" a lien and therefore do not violate the automatic stay." *Doresca v. IndyMac Bank, FSB (In re Doresca)*, 2024 WL 3418064 (Bankr. E.D.N.Y. July 15, 2024), at *6 (citing *In re Sprouse*, 2014 WL 948490, at *4-5). As the court explained, "Debtor asserts that the recordation of the Assignment of Mortgage constituted the 'creation' and 'execution' of a mortgage lien against the Property . . . This is incorrect as a matter of New York law. Recording the *assignment* did not create or perfect the lien." *In re Doresca*, 2024 WL 3418064, at *6 (emphasis in original). As a consequence, the court concluded, neither the assignment of the mortgage, nor the recording of that assignment, violated the automatic stay. *Id.*

Other courts have reached similar conclusions when confronted with similar facts. For example, in *In re Sprouse*, the court found that "an assignment does not create a lien; rather it is the original execution of the deed of trust that creates the lien and the original recording that perfects the lien" and that "[n]either an assignment nor the recording of an assignment constitutes an enforcement of [a] lien, which could only be enforced through a foreclosure." *In re Sprouse*, 2014 WL 948490, at *4-5. *See Lunn v. WestVue NPL Tr. II (In re Lunn)*, 2016 WL 5349726, at *5 (Bankr. W.D.N.Y. Sept. 23, 2016) (stating that "'[n]either an assignment nor the recording of an assignment constitutes an enforcement of the lien, which could only be enforced through a foreclosure'").

And in *Sanchez v. Aurora Loan Services, LLC* (*In re Sanchez*), the court likewise concluded:

> The [postpetition] recordation of the assignment does not violate the automatic stay. The transfer of a beneficial interest in a deed of trust is not an act of perfection of a lien. . . . The lien on the property is perfected at the time the Deed of Trust is recorded, which in the present case was well before the filing of the bankruptcy petition.

*Sanchez v. Aurora Loan Servs., LLC* (*In re Sanchez*), 2011 WL 10656551, at *8 (Bankr. E.D. Cal. Dec. 16, 2011).

Finally, and to the same effect, in *In re Samuels*, the court explained that an assignment or transfer of a mortgage and note cannot give rise to a claim for a stay violation, because such an act does not "collect a debt" – instead, it "merely transfers the claim from one entity to another." *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009). As the court found:

> The postpetition assignment of a mortgage and the related note from one holder to another is not a transfer of property of the estate. The mortgage and note are assets of the creditor mortgagee, not of the Debtor. Nor is the postpetition assignment of a mortgage and the related note an act to collect a debt; the assignment merely transfers the claim from one entity to another. The Debtor cites no particular subsection of 11 U.S.C. § 362(a), the automatic stay, that she contends such an assignment violates, and the court is aware of none.

*Id*.

So, in light of this clear and persuasive authority, the Court turns to the elements of a claim for a violation of the automatic stay, and Mr. Duhaney's assertions. And the Court does so mindful of the requirement to view those assertions in light of the "special solicitude" that is due to *pro se* submissions and considers his submissions "to raise the strongest arguments that they 'suggest.'" *Triestman*, 470 F.3d at 477.

As noted above, several elements must be satisfied in order to assert a plausible or colorable claim for a violation of the automatic stay. These are: "(1) that a bankruptcy petition

was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Laskaratos*, 605 B.R. 282 at 299-300.

There can be no doubt that here, a bankruptcy petition was filed, satisfying the first element, or that Mr. Duhaney is an individual, satisfying the second element of a claim for a violation of the bankruptcy stay. *See* Chapter 13 Voluntary Pet. for Individuals, ECF No. 1. As to the third element, the record indicates that both Goshen's counsel and its servicer were listed on the Verification of Creditor Matrix. *Id*. *See* Notice of Electronic Filing Procedure – Information Regarding Meeting of Creditors, ECF No. 5-3 (listing Goshen's counsel and servicer as notice recipients).

And plainly, Mr. Duhaney has asserted that he has been harmed by the threat of loss of his home, satisfying the fifth element of a stay violation claim. As he asserts, "I am also asking the Court to stop [Lycan] from taking any further action against my home . . . , including foreclosure or transfer, and to order that any property wrongfully taken be returned to my bankruptcy estate." App. at 1-2.

But here, the record shows that Mr. Duhaney comes up short in his assertions as to a willful violation of the stay by Goshen. He states that "[t]his transfer happened during the time the automatic stay was in effect and without asking the Court for permission." App. at 2. And he argues:

The mortgage was assigned from Goshen to Lycan on or about August 21, 2019 – nine days **before** the case was dismissed. Lycan's opposition does not deny this.

"Actions taken in violation of the automatic stay are void ab initio." – *Kalb v. Feuerstein*, 308 U.S. 433, 438 (1940).

> "Even ministerial or nonjudicial acts to enforce a lien may violate the automatic stay if they affect estate property." – *In re Ebadi*, 448 B.R. 308 (Bankr. E.D.N.Y. 2011).
>
> The assignment was not merely ministerial – it altered the identity of the secured creditor and affected the administration of estate property.

Mem. in Support at 2 (emphasis in original).  Mr. Duhaney also asserts – correctly – that "[n]o motion for relief from stay was ever filed."  Mem. in Support at 3 (emphasis in original).

None of these facts appears to be disputed by Goshen or Lycan – and yet, these undisputed facts cannot overcome the well-established rule that "neither the assignment of a mortgage, nor its recording, is an 'act to create, perfect, or enforce a lien' under [Bankruptcy Code] Section 362(a)."  *In re Doresca*, 2024 WL 3418064, at *6.  Without such an act, there simply is no violation of the automatic stay.

Mr. Duhaney also argues that Goshen and Lycan engaged in a "pre-planned scheme to shift the prosecution of the foreclosure, convert control over the Premises, and insulate Goshen from tax exposure."  Supp. Mem. in Support at 2.  And he argues that Lycan and its counsel engaged in improper practices that violate New York's Banking Law and Rules of Professional Conduct.  *See* Supp. Mem. in Support at 2-4, 5-9, 12-16.  He also claims that the Assignment of Mortgage from Goshen to Lycan is defective.  *See* Supp. Mem. in Support at 24-28.

But these assertions, whatever their merits may be, do not lend support to Mr. Duhaney's claim that a willful violation of the automatic stay occurred when Goshen assigned the mortgage on the Property to Lycan because, here again, they do not describe an "'act to create, perfect, or enforce a lien' under [Bankruptcy Code] Section 362(a)."  *In re Doresca*, 2024 WL 3418064, at *6.  Nor, more generally, do they amount to an action to collect on a debt.  *See* 11 U.S.C. § 362(a).

Finally, Mr. Duhaney urges the Court to reject Lycan's arguments that he has not proceeded in good faith in pursuing his bankruptcy case or this Application.  He states:

> Lycan devotes the majority of its opposition to character attacks and accusations of bad faith against the Debtor and co-defendants.  These are irrelevant to the question of whether the assignments violated the stay before the August 30, 2019 dismissal.

> Even if the court later determines that the Debtor engaged in abusive filings, this does not retroactively validate stay violations that occurred during the protected period.

> "Actions that violate the stay are void, regardless of the actor's good faith." – *In re Soares*, 107 F.3d 969, 976 (1st Cir. 1997).

> The Court may impose future filing restrictions but should not ignore or ratify unlawful acts that occurred while this Court's stay order was in force.

Mem. in Support at 3 (emphasis in original).

Here again, the Court recognizes the accuracy of Mr. Duhaney's statements, in many respects.  That is, the question of his good faith in filing this bankruptcy case should not determine whether a willful stay violation has occurred.  While there may be situations where a party's abuse of the bankruptcy process weighs in the consideration of whether a willful and actionable stay violation has taken place, this is not such a case.  But here again, Mr. Duhaney's arguments as to his good faith simply do not lend support to his claim that Goshen's assignment of the mortgage on the Property to Lycan was a willful violation of the automatic stay.

*      *      *

For these reasons, and based on the entire record, the Court finds and concludes that Mr. Duhaney has not stated a plausible or colorable claim for a violation of the automatic stay.

*Whether Mr. Duhaney Has Shown that this Bankruptcy Case Should Be Reopened*

Having determined that Mr. Duhaney has not established a plausible basis for his claim of a violation of the automatic stay, the Court turns to the question of whether this bankruptcy case should be reopened.

As the bankruptcy court found in *In re Weber*, where a debtor seeks to reopen a case to pursue an asserted stay violation, "there is no reason to reopen the case if there was no stay violation." *In re Weber*, 283 B.R. at 633. Where it is not clear from the record whether a stay violation occurred, and even where the record suggests a possibility, though less than a probability, that a stay violation may be established, then it may well be both appropriate and prudent to reopen the bankruptcy case "to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

Indeed, where the record suggests the prospect that a debtor may accomplish a bankruptcy purpose through the reopening of a case under the broad standard of Section 350(b), to complete any work that remains to be done, then the fact that the case may not have been "fully administered" under Section 350(a) should not be an obstacle to reopening the case.

At the same time, where the record demonstrates, unmistakably, that there simply would be no relief available to the debtor upon the reopening of the case, then "it is not inappropriate for the court to examine the issues, nor is it an abuse of discretion to deny the motion to reopen." *In re Arleaux*, 210 B.R. at 149.

And so here. The Court has carefully considered the arguments and assertions advanced by Mr. Duhaney in support of his claim that a violation of the automatic stay occurred and must be addressed. It has done so with attention to the special solicitude that is due to arguments advanced by *pro se* litigants. And even viewed in the most favorable light, the Court finds and

concludes that Mr. Duhaney has not stated a plausible or colorable claim for a violation of the automatic stay.

The conduct of which Mr. Duhaney complains – "a mortgage assignment from Goshen Mortgage LLC, Trustee for GDBT I Trust 2011-1, to Lycan Capital Fund I LLC, . . . made during my active bankruptcy case, without Court permission," simply does not amount to a violation of the automatic stay.  App. at 1.  Courts within and outside the Circuit have uniformly reached the same conclusion, and for good reason.  And in the absence of a plausible or colorable claim, Mr. Duhaney's request to reopen this bankruptcy case "to accord relief to the debtor, or for other cause," cannot succeed.

For these reasons, and based on the entire record, the Court finds and concludes that Mr. Duhaney has not shown that this bankruptcy case should be reopened.

### Reconsideration Under Federal Rules of Civil Procedure 59 and 60

For the sake of a complete record, and mindful of the Second Circuit's direction to construe *pro se* submissions "'liberally'" and "to raise the strongest arguments that they 'suggest,'" the Court also considers whether Mr. Duhaney has established a basis to revisit this Court's Dismissal Order or Order Closing Case under Federal Rules of Civil Procedure 59 or 60, made applicable here by Bankruptcy Rules 9023 and 9024.  *Triestman*, 470 F.3d at 477.

Altering or Amending a Judgment Under Rule 59.  Bankruptcy Rule 9023 provides that Federal Rule of Civil Procedure 59 applies in cases under the Bankruptcy Code.  Rule 59 addresses grounds to alter or amend a judgment, and provides that a court may grant a motion to alter or amend a judgment if certain criteria are met.

A request for reconsideration invites the Court to consider several matters.  In this Circuit, "[t]he major grounds justifying reconsideration are an intervening change of controlling

law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations and citations omitted).

In addition, "the standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).  Courts narrowly construe this standard, and apply it strictly against the moving party, so as "to dissuade repetitive arguments on issues that have already been considered fully by the court." *Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F. Supp. 747, 748 (S.D.N.Y. 1985).

And the Second Circuit has stated that Rule 59 is not "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (citation omitted).

Here, the record does not show, or even suggest, that there are "controlling decisions or data that the court overlooked" that would have changed the outcome of any matters considered during the pendency of Mr. Duhaney's bankruptcy case.  That is, neither the standards for reconsideration nor Rule 59 provides a basis to revisit and undo the dismissal and closure of this bankruptcy case.

Relief from a Judgment or Order Under Rule 60.  Bankruptcy Rule 9024 provides that Federal Rule of Civil Procedure 60 applies in cases under the Bankruptcy Code.  Rule 60(b)(1)

to 60(b)(6) set forth several grounds on which, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b).

Rule 60(b)(1) permits a court to relieve a party from a final order on grounds of "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b)(2) provides that a court may relieve a party from a final order on grounds of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Rule 60(b)(3) provides that a court may relieve a party from a final order on grounds of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Rule 60(b)(4) provides that a court may relieve a party from a final order on grounds that "the judgment is void." Rule 60(b)(5) provides that a court may relieve a party from a final order on grounds that "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." And Rule 60(b)(6) provides that a court may relieve a party from a final order for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)-(6).

As the Second Circuit has noted, "[s]ince [Rule] 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). And as with Rule 59, Rule 60(b) is strictly applied, following the tenet that "[a] court's final judgment should not 'be lightly reopened.'" *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 286 (E.D.N.Y. 2001) (quoting *Nemaizer,* 793 F.2d at 61). Moreover, "a motion under Rule 60(b) is addressed to the sound discretion of the trial court . . . ." *Montco, Inc. v. Barr* (*In re Emergency Beacon Corp.*), 666 F.2d 754, 760 (2d Cir. 1981).

In his Supplemental Memorandum in Support, Mr. Duhaney cites Rule 60(b)(4) and asserts that "orders entered without due process are void." Supp. Mem. in Support at 11. He

asks the Court to vacate the Dismissal Order under Rule 60(b)(4) "for lack of constitutionally adequate notice and opportunity to be heard (service misdirected to Goshen)."  Supp. Mem. in Support at 28.

But here, the record does not show, or even suggest, that there was any shortcoming in the notice or due process afforded to any party to this proceeding – including Mr. Duhaney, Goshen, and Lycan.  Instead, the record shows that the Dismissal Order was entered after the Chapter 13 Trustee provided notice to Mr. Duhaney and his counsel of the Motion to Dismiss, which was served and filed on Mr. Duhaney and his counsel on November 27, 2018.  Motion to Dismiss, ECF No. 13.  And the Court scheduled four hearings on the Motion to Dismiss, and on the fourth scheduled hearing, the Court held a hearing on that motion on August 5, 2019, at which the Chapter 13 Trustee and Mr. Duhaney appeared and were heard, and the Motion to Dismiss was granted.  ECF Entry dated August 5, 2019.  Thereafter, at the Court's direction, the Chapter 13 Trustee settled a notice of proposed order of dismissal of the case on notice to Mr. Duhaney and his counsel.  Notice of Settlement of Proposed Order, ECF No. 24.  And without opposition, that Dismissal Order was entered on August 30, 2019.  Dismissal Order, ECF No. 25.

And the same is true as to the consideration of Mr. Duhaney's Application.  The record shows that both notice of the Application and an opportunity to be heard were provided to Mr. Duhaney, Goshen, and Lycan.  In particular, on May 19, 2025, the Application was served by Mr. Duhaney on Lycan, Goshen, the Chapter 13 Trustee, and the United States Trustee.  App. at 7; Certificate of Service, ECF No. 32.

Thereafter, on May 15, 2025, the Court entered an order scheduling a hearing on the Application for July 8, 2025, and that order was served on Mr. Duhaney, Mr. Duhaney's former counsel, Planet Home Lending, the Chapter 13 Trustee, and the United States Trustee.  Order

Scheduling Hearing on the Debtor's Application, ECF No. 30; BNC Certificate of Mailing with Application/Notice/Order Notice Date 05/17/2025, ECF No. 31.

Mr. Duhaney and Lycan filed extensive written submissions addressing the Application, including Lycan's Opposition to the Application (ECF No. 36), Mr. Duhaney's Memorandum of Law in Further Support of the Application and Supplemental Memorandum of Law (ECF Nos. 38, 41), and Lycan's Supplemental Opposition (ECF No. 45).

And finally, the Court held four hearings on the Mr. Duhaney's Application, on July 8, 2025, July 30, 2025, August 13, 2025, and September 29, 2025, at which Mr. Duhaney and Lycan appeared and were heard.

Nor does the record show, or even suggest, that any of Rule 60(b)'s other grounds for relief are met – including "mistake, inadvertence, surprise, or excusable neglect" (Rule 60(b)(1)); "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" (Rule 60(b)(2)); "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party" (Rule 60(b)(3)); "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable" (Rule 60(b)(5)); or "any other reason that justifies relief" (Rule 60(b)(6)).

In sum, Rule 60 does not provide a basis for relief from the dismissal and closure of this bankruptcy case.

*          *          *

For these reasons, and based on the entire record, the Court finds and concludes that Mr. Duhaney has not shown that this Court's Dismissal Order, or its Order Closing Case, should be

altered or amended under Federal Rule 59, or that relief from those orders is warranted under Federal Rule 60.

## Conclusion

For the reasons set forth herein, the Court finds and concludes that Mr. Duhaney has not established grounds to reopen this bankruptcy case.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
December 4, 2025

Elizabeth S. Stong
United States Bankruptcy Judge